Case number 22-3100, Terry Caskey v. Nathan Fenton, et al., argument not to exceed 15 minutes per side. Ms. Lippman, you may proceed for the appellant. Ms. Lippman, may it please the court, my name is Allison Lippman, I represent officers Fenton and Herzberger. I would like to reserve three minutes for rebuttal. There are two main reasons why the district court's denial of summary judgment on the issue of qualified immunity should be reversed. First, as everyone is aware, for qualified immunity to be granted to the plaintiff, the plaintiff must show that there is a general constitutional violation and more specifically, and what's at issue here, that the right that the officer has violated is a right that has been clearly established. And that is not addressed in the district court's decision at all. So the defendants have the burden of proof on that? No, your honor, just like with everything else in qualified immunity, the plaintiffs have the burden of proof and they haven't met that proof. That there has been a clearly established right violated to show that the officer's actions were not objectively reasonable. To establish that, they have to show that a reasonable officer facing similar conduct would have known that their conduct was unreasonable and they have not provided any case law similar to the situation that we have here, which was when the officers observed a vehicle and they observed a traffic violation, first after seeing the vehicle stop and pick up a suspected solicitor, they watched the vehicle and they attempted to initiate a traffic stop. They observed the vehicle and the driver for five, at least five blocks and they were not able to initiate that traffic stop. And so the conduct that they had, that they did, which was not unreasonable in any way, is they used what they could see of the driver in the car and it was very clear what they could see. They put it in their report, they could see the driver's build, they could see the driver's race, they could see the driver's hair. They used that description and they pulled up the OLEG photo of the car's registered owner and they used that photo to assist with their identification. There's evidence in the record from which a jury could find that the officers were not truthful about their observation of the driver of the car, nor were they truthful about their description of the course of their observation of the vehicle. Correct? I don't believe that's correct. Well, now, why isn't that correct? Because there can be discrepancies between their account and the video observed and there's also evidence from which the jury could find, one, that Mr. Caskey was not driving the car, but also that they couldn't see who was driving the car. And so, I mean, that sets up a far different scenario from the one you just related to us. Your Honor, I don't believe that evidence is in the record and this is why. What about the video? The expert who analyzed the video and everyone who watches the video can see that the quality of the video... Is the video in the record? The video is in the record, but it's a very poor quality video. And is the evidence in the record that Mr. Caskey at least says he wasn't driving that night? That is in the record. Okay, so both those things are in the record. So his statement that he's not driving is in the record, but even if the officers made a mistake as to identification, that should not be a reason to deny qualified immunity. What the officers and the other evidence... So let me back up. Just as with other aspects of qualified immunity, it's the plaintiff's burden to show the officers are not entitled to qualified immunity. And what you're alluding to is the fact that they want this to be granted by saying that the officers deliberately lied. And if that is their theory, they have a heightened burden. They have to show substantial evidence, according to Butler v. Detroit, that the officers engaged in a deliberate falsehood. And that evidence is really not here in this case, and this is why. They rely on an expert report created by Mr. Sobeck. And if there's a... First of all, Mr. Sobeck's conclusions do not conflict with the officer's report in any way. His overall conclusion is that the lighting was insufficient for the officers to observe fine detail. And the officers never allege that they observed fine detail of the driver. What they allege is that they can see the build and the hair and the race of the driver. So there's no falsehood there. But there are other reasons why the expert's report does not create a material issue of fact. Significantly, when the expert was doing his analysis, he did not know the lighting source of the cruiser. His whole analysis is based on there not being sufficient lighting to see the driver. But he did not realize that the cruiser the officers were driving that night had additional LED spotlights on their cruiser. And he did not take that into his determination. Is there a second expert, Mr. Smigley? He's not really considered an expert by the district court. I think the plaintiff is not offering him as an expert. I would guess, speculate that the plaintiff is offering him for demonstrative purposes. And so he was not considered as an expert. He took pictures of cars during the day, which is a very different issue than what's before the court right now. So if you consider the facts in this case, and what's at the heart of this issue is, were the officers' conducts objectively reasonable in this situation? And what you have to consider is that they observed this Nissan for five blocks. They were both consistent that they saw enough detail of the driver that they were able to match that driver with the photo of the registered owner. And if you look at additional evidence that plaintiff has offered to suggest there is a material effect, it doesn't show that there's a material effect, and this is why. He has offered the picture of Mr. Kasky, and he has also offered the picture of the person who plaintiff says was driving that night. So you assume at this stage in the game, you assume all facts in favor of the plaintiff. So you assume that other individual was driving that night. If you look at those photos, those two individuals do appear somewhat similar. They have similar builds, they have a similar shape of faces, and they have similar haircuts. And that's exactly what the officers said that they saw that night. So there is no issue of material fact as to why the officer should not be granted qualified immunity. And there is also no issue of material fact that the officer is engaged in a falsehood. They have the heightened burden, the plaintiff has the heightened burden of showing that there has been a substantial falsehood, and they have not met that burden. There is no evidence in the record that the officers falsified the police report in this case. Because the officer's conduct was objectively reasonable, and because there is no articulation of the clearly established right that was violated, these officers should be entitled to qualified immunity. Does the court have any other additional questions? Not at this time. Good afternoon. May it please the court, I am Jack DeRora. I represent Terry Scott Caskey. I'm going to address the first point, that we have not established a clearly articulated constitutional violation. This court has stated it perhaps four or five times. King v. Harwood, Stillwagon, Spurlock, Webb. And here's the constitutional violation. Individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has influenced or participated in the decision to prosecute the plaintiff, for example, by knowingly or recklessly making false statements that are material to the prosecution. In those four cases that I've cited, the court doesn't say you have to have similar circumstances. That's for an excessive force case. Here, if you show false statements, falsely or recklessly made, you have established a constitutional violation. Now, let's look at what my opponent is talking about. The two key parts to this case. If the police officers submitted a report to their supervisor and the prosecutor that they had seen the face of the driver of that Altima when, in fact, they had not seen the face, that would be a false statement made recklessly or knowingly. If the officers submitted a report stating that the face of the driver they saw was the face of Terry Caskey when, in fact, it was not, that would be a false statement made recklessly or knowingly. The officers say they saw the face of Terry Caskey. My client says he was home. Now, mind you, all the officers have is their testimony. In addition to my client's own testimony, we have two important pieces of evidence. We have the video. The video shows, and it came from the police, that it was impossible to see the driver's head, let alone his face. Science tells us that the darkness in and of itself meant that you could not see with clarity and you could not see color. We also have a problem with the line of sight. To see the beard of the driver, to see his head, you have to be able to look through the seat and the headrest. Now, jurors could reasonably watch that video and reasonably conclude that it was impossible for the officers to see the driver's face. Jurors could also reasonably conclude, after hearing the expert testimony from James Sobeck, that it was impossible to see the face, to see the head. And if the jury makes those decisions, then the officers lose qualified immunity by virtue of the cases I've cited. They've made a false statement knowingly or recklessly. To evade liability, the police officers, in concert with the city, have to do five things. Before I get to those, let's talk about the video for a minute. I want to talk about resolution in two different respects. The resolution of the video is not good. We know that the officers could see a little better that evening than what we see on the video. There's no question about that. But just because they could see a little better than what we see on the video doesn't mean they could see inside the Altima. They couldn't see inside the Altima because of darkness. At that low level of light, even more appropriately, when it's that dark, only the rods in the eyes are stimulated. The rods do not provide us with great resolution, clarity, focus, sharpness. They do not provide color. If you want sharpness, detail, and color, you need more illumination so that the cones are activated. That's the science that's been admitted to the district court. The city had nothing to refute any of that. Let's talk about illumination. That video captures whatever illumination shown on that scene, be it from the police van, the taillights of the car, the streetlights, the reflection. My opponent says, well, Mr. Sorbet, the expert, didn't account for all the strobes in the van. Whether that van had five strobes or 50 strobes, it doesn't matter. You look to the video for the amount of light that's shown. Look at the video. You can believe your eyes. The video tells the story, and I would hope this court gives a jury the opportunity to see the video and believe their eyes. Now, let's look at the fiction that the officers have created, because it's not what my opponent has stated. They claim to have done the impossible. They say they saw the driver's face, but the driver was always looking away from them, right? They never saw the driver get in or out of the car. Now, forgive me for turning my back on the panel for a minute. This is what the police officer saw. But even this poor replication doesn't do the trick, because just as this podium blocks your view of my lower torso, the seat would have blocked my entire torso. The headrest would have blocked my head. And then we get back to the whole idea of it being too dark. It's just impossible to see the contours of the head, and you can't see skin color. Now, these officers, I'll get to that in a minute. They say they saw color. Now, when you look at that video, and don't indulge me if you're the police officers, and you're looking this way at the driver, there's a headrest. And it's only there for a second, but you'll see the crown of the head, but only the very crown of the head. And it's fuzzy. It's a ghost-like image. So the city, in rebuttal to that, says, well, you know, you know the driver turned his head. That's how they saw his face. Well, let's go through that for a minute. Regardless of how much he turned his head, you still have an illumination problem. Regardless, you still have the seatrest problem. It doesn't matter if the driver's head was attached to his neck by way of a swivel. Let's assume he turned his head around 180 degrees. No matter what, we have the headrest blocking all but the very crown of his head. The second thing the police officers do is they have created great fiction. They have said things that aren't reflected on the video. Now, if you look at the video, it's slow speed. There's no danger. There's no risk to public safety. There's no emergency. Here's what the officers tell us. They say as the Altima is driving west on Union, it makes a right-hand turn, right? It makes a right-hand turn onto Central, and it does veer off to the left into the southbound lane. When the officers claim in their report, that created a substantial risk of harm for anyone traveling south. But when you look at the video, there's no one traveling south. There are no cars. There are no people. The officers say, well, when the car is traveling north on Central, it makes a left-hand turn onto Sullivan. As it's making the left-hand turn on Sullivan, a car comes south on Sullivan and tries to make a right turn. And the car coming south had to slam on its brakes to avoid a collision. I've looked at that video between a dozen and 20 times. That car traveling south is always, for the few seconds it's in there, is always traveling very slow as it's making the right-hand turn. I personally don't see it stopping. But then the city gets involved and says, this was a tense, uncertain, rapidly evolving situation. Really? Those words apply to the great chase scene in the movie Bullitt, where Steve McQueen is driving about 100 miles an hour in downtown San Francisco. Look at the video. Believe your eyes. So why do they do this? They're changing the narrative, right? They want to make it look like what they did was reasonable under the circumstances. But that's not what the police officers said in their report. In their police report, they said, we saw an older male. Well, how in the world could they tell it was an older male? They're 25 feet behind, it's dark, and they have to look through a seat and a headrest. They said he was white. There's no color perception. How did they know he wasn't black? They said he had short hair. How could they have the resolution to see that? And they said he was medium build. That's like saying, I mean, they had to see through the seat to determine that? How does that happen? So they say that. We saw an older male, white, short hair, medium build. Then they go to OLEG, Ohio Law Enforcement Gateway. That's their database. They look up the description for Mr. Caskey, and they say, that's him. That's the man we saw. They don't leave any doubt. They don't say, we think it was Caskey. It sort of looked like Caskey. It may have been Caskey. They say, we saw Caskey. The third thing they did is what I just articulated at the start. They asked for a different standard. It's not similar circumstances. Similar circumstances. It is, did they create a false report wrongly or recklessly? And the support for that is the video and the science. Now, the city does something else. They say, you know, that evidence from Mr. Servick isn't so hot. He didn't count the number of strobes. The comparisons he made weren't right. They don't like it. Here's the problem with that argument. It was all evidence admitted by the district court. At this proceeding, the only issue is whether the district court erred, as a matter of law, in denying the city, or denying the officers, qualified immunity. I think the district court had plenty of evidence to grant my client summary judgment on that issue. But we're not here to fight that. Certainly, at the very least, it's a jury question. The last thing the city does, they didn't talk about it here. They're trying to blame the prosecuting attorney. They say, hey, we didn't ask for this man to be arrested. The prosecuting attorney is an intervening force. That's his discretion. But that doesn't answer the question, because this court has said, it's malicious prosecution when you make a false statement, knowingly or recklessly, that influenced the decision to prosecute. And we have a stipulation on file in the district court that the police officer who testified, it wasn't the two officers in this case, the police officer who testified relied on that report. The district court said, I find Mr. Sobeck's testimony and the video significant. Now, the district court didn't go as far as I would have preferred, which is to say, the officers are denied, as a matter of law, qualified immunity. Instead, the district court said, it's a triable fact, because there are questions. Look, you're allowed to believe your eyes. Really simple. Those officers are describing something that is humanly impossible. And if it's humanly impossible, then it had to be made knowingly or recklessly. And I would ask that this court affirm what the district court did, and allow jurors to see that video and believe their eyes. Thank you. Okay. Thank you, counsel. Ms. Lippman? Thank you. I'd like to point out a couple things. Of course, you're aware your review of the facts is de novo. I also want to point out that the officers did not have a chance to watch the video 20 times before they created the report. For qualified immunity, for all aspects of qualified immunity, officers have to have notice that their conduct is unreasonable. That's the clearly established component. In this situation, Mr. Kasky is suggesting that the officers created a falsehood by saying that once someone decides to flee a traffic stop at 7 o'clock p.m. in a highly residential area, that that's not dangerous. That's not a falsehood. That's absolutely true. What the officers did in this case was they were seated much higher than was acknowledged by the expert. And the expert even acknowledges himself that it would be possible for the officers to have seen some of the driver. So the expert who supposedly creates this material issue of fact says that some part of the driver could be seen by the officers. Then there's no falsehood. What the officers did in this case, which is objectively reasonable, is they attempted to initiate a traffic stop. When that failed and the driver of the Nissan entered the freeway at an incredibly high rate of speed, they decided to stop their pursuit for safety reasons. That's entirely reasonable. Instead of entering the freeway and creating a dangerous high-speed pursuit, they used what they observed of the driver, they pulled up the registered owner's picture, and they matched that to make their identification and issue a warrant for fleeing. Nothing that the officers did was unreasonable. It was all objectively reasonable, and they should be granted qualified immunity. Thank you. Okay, thank you, counsel, for your arguments this afternoon. We do appreciate them. The case will be submitted.